STATE, Appellant, v. AETNA INSURANCE CO., Respondent.

(237 N. W. 772.)

(File No. 6883. Opinion filed August 3, 1931.)

*M. Q. Sharpe,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for Appellant.

*Cherry, Davenport & Braithwaite,* of Sioux Falls, for Respondent.

POLLEY, P. J. This action was brought to recover on a policy of fire insurance. The insured property was on a farm in Butte county. Some time prior to the issuance of the policy involved the rural credits board and the land settlement board had each made a loan on the said farm, and each of said boards had taken a mortgage on the said premises. It is not clear from the record, nor is it material, whether the policy contained a mortgage clause for the benefit of the state, but after the fire that destroyed the insured building and after defendant had refused to pay the loss, the owner of the insured property assigned the policy, and the proceeds thereof, when collected, to the state, with the understanding that the proceeds of the policy when collected should be

applied on the rural credits loan. This accounts for the state being plaintiff in the action.

The complaint alleges the issuance of the policy, the destruction of the insured property by the fire, the refusal by defendant to pay the loss, the assignment of the policy to the state. The complaint alleges that after the fire the insured notified defendant of the fire and furnished defendant with a "proof of loss."

The answer is a general denial with an admission of the issuance of the policy, the destruction of the insured property by fire, and its refusal to pay the loss; and by way of affirmative defense alleged upon information and belief that "the said fire was caused and procured by the act of the owner of said premises."

The case was tried to a jury. At the close of the testimony the defendant moved for a directed verdict. The motion was denied, and the jury returned a verdict for the plaintiff, but before the entry of judgment defendant moved for judgment notwithstanding the verdict. After an interval of more than two years this motion was granted, and judgment was entered dismissing the action at plaintiff's cost.

The insured never furnished the defendant with a "proof of loss" as provided for in the policy, and it was because the evidence was insufficient to show a waiver of "proof of loss" by the defendant that the court granted its motion for judgment notwithstanding the verdict. And whether there was evidence sufficient to charge defendant with a waiver of proof of loss is the only question of importance to be determined by this court.

It is not contended that any request for a proof of loss was ever made by the defendant, and it does. not appear that the defendant at any time desired a proof of loss, or intended to pay the loss, or would have done anything different from what it did do had the proof of loss been furnished.

The insurance policy involved was issued by one C. M. Damon as agent, at Newell, for the defendant company. Within a day or two after the fire the insured notified said agent of the fire by telephone and called upon him in person a day or two thereafter. Upon receipt of this information the said agent notified the defendant's state agent at Sioux Falls by telegram. Upon receipt of this telegram said state agent wrote Mr. Damon as follows:

"Feb. 6, 1922.

"Mr. C. M. Damon, Newell, S. D.
    "Dear Sir:
                    "Re: Loss, Policy No. 7
                    "Howard L. Clark.

"I have for acknowledgment your notice of loss under the above captioned policy and have been informed that there is possibly some question with regard to the facts in connection with this loss. I would appreciate it very much if you could give me any information in regard to the circumstances connected with this loss and also with regard to policy No. 6 in favor of Nettie Clark, as to whether this assured is a relative of the other Clark. I would appreciate it very much if you would let me have any information possible by return mail, so that I will be in position to know what to do in regard to the adjustment.

"Thanking you in advance, I am,

                    "Very truly yours,        State Agent."

In reply to this letter, Mr. Damon wrote Mr. Hoyt on February 9th as follows:

"Chas. S. Hoyt, Agent, Sioux Falls, S. D. Dear Sir: In reply to yours of the 6th, I would have written you this letter sooner but didn't know just who would be handling this matter so have waited for information. I realize that there is some occasion for investigation of facts in connection with this loss tho from what I have observed I confess I am unable to see where there is anything that really looks wrong. It does seem strange in some ways. I happen to know quite a lot about this famous Dr. Clark case and believe that he has some enemies who would not hesitate to burn his property and it would appear that there is more likelihood of fire being caused thus than by the hand of the insured or any of his family. Of course you don't want any insurance on property that is liable to be burned even by the enemies of the insured, and I would not care to write it, and in this case of course have no suspicions that anything of this sort would develop.

"You have probably been informed that Sunday morning the balance of the new house not destroyed by the first fire was burned and to the best of my knowledge and belief none of the Clark

family were within many miles of the place nor had been for two or three days previous, nor have been since. Dr. Clark, who had been living at the place in question, was at Lead, S. D., on business and I am sure in my own mind there could be no way of connecting him or Howard with this last fire, and probably not with the other one.

"Nettie Clark is the wife of Howard Clark and the farm on which is the house which we recently insured stands in Nettie's name. This risk is just south of Newell about a mile while the loss occurred on the Arpan farm about fifteen miles northwest of Newell.

"I would like to talk this matter over with you in detail if necessary before you allow the company to decide against paying this claim. I am expecting to leave here Saturday or Monday for a three weeks' trip east. If you want to wire me where I could meet you in Pierre, or possibly later on in Sioux Falls, I might do so.

"If you are coming here yourself to adjust I will probably not be able to see you, but others here in the bank could explain anything necessary.

"Yours truly, [Signed] C. M. Damon."

And again on February 11th Mr. Hoyt wrote Mr. Damon as follows:

"Mr. C. M. Damon, Newell, S. D.
"Dear Sir:
"Re: Loss, Policy No. 7,<br>"Howard L. Clark.

"I have for acknowledgment your letter of the 9th with information regarding the above loss and am indeed very much surprised to be informed that they have had a second fire in the house which has been totally destroyed. I had no information whatever with regard to the second fire but knew there were peculiar circumstances existing and of course was anxious to get any information possible. Mr. J. B. Allen, with the Commercial Union left for the Black Hills yesterday and I am writing him, care of Bucholz & Richards, stating that I have received your letter notifying of the second loss, completely destroying this dwelling; also that you are conversant with the famous Dr. Clark case. I would

appreciate it if you would give Mr. Allen any information possible in connection with the above so that upon his return we can have all the facts possible gathered together and be in position to take some further action in the matter. I wired you to cancel policy No. 6, Nettie Clark, as I understand she is the wife of Howard Clark, asking you to wire me and trust you cancelled same immediately upon receipt of my telegram. I would advise I am always in Sioux Falls on Saturdays and Sundays and if going through here would be very glad to see you; or if you would let me know when you are going through, I would endeavor to arrange to see you; and if I could not, would be in .position to wire and thus save you a special trip.

"Very truly yours,         State Agent."

From the two letters written by Mr. Hoyt it is evident that the defendant through its authorized agents had full knowledge of the loss within two or three days after the occurrence of the fire. Had the defendant desired the detailed information contained in a formal proof of loss, then was the time to have said so. And if it had sent to the insured its blank forms for making out formal proof of loss, there is nothing in the record to suggest that the same would not have been filled out, verified, signed, and returned by the insured. Without waiting for or asking for a proof of loss defendant proceeded to make an investigation of the fire. The Mr. Allen mentioned in the state agent's letter, Exhibit 7, called on Mr. Damon in connection with this fire and discussed the same with him. About the same time or a little later the assured was called to the office of Bucholz & Richards, who represented the Commercial Union Insurance Company at Newell, where he was introduced to one Wilson who at first assumed to represent both the Commercial Union and the defendant companies. He discussed with the insured the cause of. the fire and went with the insured to the scene of the fire and looked over the premises. He then stated to the insured that he did not represent the defendant company, but only the Commercial Union Company. However, at the trial defendant did not claim that Wilson was not its agent and was not there for the purpose of investigating the fire that destroyed the insured property.

We believe the circumstances as above shown are sufficient to show a waiver of proof of loss by defendant. It clearly

appears that the defendant had decided not to pay the loss long before the expiration of the time for furnishing proof of loss. It was in no wise prejudiced by the failure to furnish the proof of loss. Nor did it rely upon failure to furnish a proof of loss when its answer was prepared. Its defense at that time was that the fire that destroyed the insured property "was caused and procured by the act of the owner of said premises," and it was not until it had utterly failed to establish this defense that it fell back on the defense of no proof of loss.

"Failure of insured to furnish proofs of loss, * * * must be specially pleaded by insurer; it cannot be relied upon as a defense under the general issue or a general denial." 26 C. J. 502.

The rule is well settled in this and other states that, if the insurer, within the time for presenting proofs of loss, refuses or fails to pay the loss, it thereby waives the necessity of proofs. Orr v. National Fire Insurance Co., 50 S. D. 519, 210 N. W. 744; Id., 52 S. D. 513, 219 N. W. 119; 26 C. J. 406.

"All defects in a notice of loss, or in preliminary proof thereof, which the insured might remedy and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." Section 1446, Rev. Code 1919.

"Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground." Section 1447, Rev. Code 1919; Orr v. Ins. Co., supra.

Respondent contends that plaintiff did not plead waiver in his complaint. He alleges performance on his part, and under this allegation he may prove waiver of such performance by the defendant. Southern Surety Co. v. Farrell, 79 Colo. 53, 244 P. 475; Simmons v. Home Ins. Co., 235 Ill. App. 344; Pfaffengut v. Export Ins. Co., 55 N. D. 112, 212 N. W. 518.

Finally defendant contends that this action cannot be maintained by or in the name of the state. We find little merit in this contention. 26 Cyc. at page 907 lays down the general rule that: "A State, as plaintiff, may sue in its own courts, and this right, although sometimes expressly conferred by statute, exists independently of statute as an incident of sovereignty; and a state may sue in its own courts both in its sovereign capacity and by virtue of its corporate rights."

Under the power granted to the Legislature by section 1 of article 13 of the Constitution as it now exists the rural credits board was established. Chapter 333, Laws 1917. This board was given the power to loan money and take real estate mortgages as security for the payment thereof. Within the scope of the business for which it was created it was given all the powers of a natural person. The property that was insured by the policy involved in this action was situated on land that was mortgaged to the state to secure a rural credits loan. This mortgage contained a provision whereby the mortgagor covenanted to keep the buildings on the mortgaged property insured against loss by fire for the benefit of the state. The building involved in this action had not been constructed at the time of the execution of the mortgage, but this fact is wholly immaterial, for so soon as constructed it became a part of the mortgaged property. Whether the policy involved contained a "mortgage clause" in favor of the state does not appear from the record, nor is it material. There was nothing to hinder the mortgagor paying the proceeds of the policy to the state to be applied on the mortgage debt; and where the insurer refused to pay the loss there is nothing to hinder the mortgagor assigning the claim growing out of the policy to the state to be applied, when paid, on the mortgage debt; and when so assigned it became the property of the state to be enforced and realized upon the same as though owned by a natural person. The defendant having refused to pay the loss it became the right, and the duty as well, of the rural credits board to bring this action to enforce payment thereof.

The trial court erred in granting defendant's motion for judgment notwithstanding the verdict, and said judgment is reversed. The cause will be remanded to the trial court, with directions to enter judgment for plaintiff on the verdict.

WARREN and RUDOLPH, JJ., concur.

CAMPBELL, J., dissents.

ROBERTS, J., disqualified and not sitting.